AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

**FILED**

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

APR 2 7 2020

MITCHELL R. ELFERS
CLERK

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>2014 Gray Cadillac XTS Sedan with VIN:<br>2G61P5S30E9182688 | )<br>)<br>)<br>)<br>)<br>)  Case No. John 650 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See attachment A of the Affidavit

located in the _____State and_____ District of _____New Mexico_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, as attached hereto and incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C § 841 | Distribution and possession with intent to distribute controlled substances; and |
| 21 U.S.C § 846 | Conspiracy to distribute and possess with intent to distribute controlled |
| 18 U.S.C § 924 | substances; and Use of a Firearm in Furtherance of a Drug Trafficking Crime |

The application is based on these facts:

See attached Affidavit

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Michelle Cobb*

_____
*Applicant's signature*

Michelle A. Cobb, Special Agent, FBI
*Printed name and title*

Sworn telephonically and signed electronically.

Date:  April 27, 2020, 3:46 p.m.

_____
*Judge's signature*

City and state:  Albuquerque, NM

John F. Robbenhaar, United States Magistrate Judge
*Printed name and title*

| Print | Save As... | Attach | | Reset |
|---|---|---|---|---|

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

IN THE MATTER OF THE SEARCH OF:
2014 Gray Cadillac XTS Sedan with VIN:
2G61P5S30E9182688

Case No. _____

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Michelle A. Cobb, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the vehicle described as a 2014 Gray Cadillac XTS Sedan with VIN: 2G61P5S30E9182688, hereinafter "SUBJECT VEHICLE," further described in Attachment A, for the things described in Attachment B.

2.      I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been since January 2017.  I am currently assigned to the Albuquerque Division, Santa Fe Resident Agency.  During my employment with the FBI I have conducted numerous investigations of suspected violations of federal law, including drug trafficking, Indian Country crimes, and crimes of violence.  I have received training in how to conduct complex investigations and I have previously participated in the execution of arrest and search warrants pertaining to violations of federal law.  My investigative training and experience includes, but is not limited to, conducting surveillance, interviewing subjects, targets and witnesses, writing affidavits for and executing search and arrest warrants, managing confidential human sources and cooperating witnesses/defendants, issuing subpoenas, collecting evidence, to include

evidence of drug trafficking, and analyzing public records.  I have received training and

participated in the execution of search warrants involving drug trafficking in the past.

      3.     I am aware of an investigation regarding the SUBJECT VEHICLE pertaining to

possible federal narcotics trafficking and firearms charges.

      4.     I make this affidavit based upon my own personal knowledge, which is

substantially derived from my participation in this investigation, as well as that of fellow agents

and officers who have participated in the investigation.  In addition, I have developed

information I believe to be reliable from additional sources including:

      a.     Information provided by Task Force Officers ("TFO"), Special Agents

              ("SA"), and Intelligence Research Specialists (IRS) of the FBI, and other

              law enforcement officials ("agents"), including oral and written reports

              that I have received directly or indirectly from said investigators;

      b.     Interviews of witnesses conducted by the FBI and other law enforcement

              agencies; and

      c.     A review of driver's license and automobile registration records.

      5.     This affidavit is intended to show only that there is sufficient probable cause for

the requested warrant and does not set forth all of my knowledge about this matter.

## FEDERAL CHARGES RELEVANT TO THIS INVESTIGATION

      6.     I believe there is probable cause that the SUBJECT VEHICLE contains evidence

of violations of, *inter alia*:

    a.    21 U.S.C. § 841 – Distribution and possession with intent to distribute controlled substances;

    b.    21 U.S.C. § 846 – Conspiracy to distribute and possess with intent to distribute controlled substances; and

    c.    18 U.S.C. § 924 – Use of a Firearm in Furtherance of a Drug Trafficking Crime.

## EVIDENCE SOUGHT DURING SEARCH

7.    Based on my training, experience, and participation in this and in similar investigations, I believe that individuals involved in illegal trafficking of controlled substances often conceal evidence of their drug trafficking in their vehicles. This evidence, which is discussed in detail in the following paragraphs, includes controlled substances, paraphernalia for weighing, packaging and distributing controlled substances, other contraband, records, documents, as well as evidence of drug transactions, proceeds from drug sales, and valuables obtained from proceeds.

8.    Individuals involved in illegal drug trafficking of controlled substances often keep quantities of controlled substances in their vehicles.

9.    Individuals involved in drug dealing commonly use certain paraphernalia to package and prepare controlled substances for distribution. The paraphernalia includes, but is not limited to, packaging materials (such as plastic baggies, wrapping paper, cellophane, condoms, and film canisters) and scales to weigh controlled substances. Drug dealers commonly store these items in their vehicles in order to maintain ready access.

3

10.     Drug traffickers often maintain records of their transactions in a manner similar to the record keeping procedures of legitimate businesses.  Even after the drugs are sold, documentary records are often maintained for long periods of time, even years, to memorialize past transactions, the status of accounts receivable and accounts payable, and the names and telephone numbers of suppliers, customers and co-conspirators.  These records may be maintained on paper, in the form of business and personal ledgers and diaries, calendars, memoranda, pay/owe sheets, IOUs, miscellaneous notes, money orders, customer lists, and telephone address books. These records can reflect names, addresses and/or telephone numbers of associates and co-conspirators, the sale and purchase of controlled substances including precursors, customer lists, and amounts of money owed to the trafficker by customers and by the trafficker to his/her suppliers.

11.     Drug traffickers often travel domestically and internationally to facilitate their trafficking.  Evidence of foreign and domestic travel by persons engaged in illegal drug trafficking includes travel itineraries, airline tickets, receipts, passports, and visas.  These items are stored by drug dealers in their vehicles.  Many of these items are accessible via the internet and can be downloaded and saved on a computer or other digital media and on storage media.

12.     The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, smartphones, tablets, server computers, and network hardware. The term "digital media"

4

includes personal digital assistants (PDAs), smartphones, tablets, BlackBerry devices, iPhones, iPods, iPads, digital cameras, and cellular telephones. The term "storage media" includes any physical object upon which electronic data can be recorded, such as hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media or digital medium.

13.     Drug traffickers often store drugs and other items related to trafficking in vehicles away from their residences and businesses. They can utilize their vehicles as mobile storage to hide their hide drugs, contraband, money and other valuables. Drug traffickers often keep documents and other items tending to show the existence of other stored drugs, contraband, money and other valuables in their vehicles. Those documents and other items include rental agreements, receipts, keys, notes and maps specifically concerning other storage rooms, lockers, and safety deposit boxes. This evidence may be found on their person or in their businesses, residences and surrounding garages, outbuildings, carports and yards, the residences of friends or relatives, and cars. This type of documentation can be stored on digital media and concealed virtually anywhere.

14.     Other evidence of transportation, ordering, possession and sale of drugs can include the following: telephone bills to show numbers called by the drug dealers (and hence potential associates), overnight mail receipts, bank statements, deposit and withdrawal slips, savings books, investment statements, loan statements, other financial institution statements, and federal and state tax returns. The above items can be stored by drug dealers in their vehicles. This type of documentation can be stored on digital media and concealed virtually anywhere.

15.    Drug traffickers usually sell their product for cash.  Because large quantities of drugs can sell for thousands of dollars at the wholesale level, dealers may have thousands of dollars in cash on hand both as proceeds of sales and to purchase supplies/inventory.  In addition, drug dealers often have other assets generated by their drug business, or purchased with cash earned, such as precious metals and stones, jewelry, real estate, vehicles, and other valuables.

16.    Individuals involved in drug dealing often try to legitimize these profits from the sale of drugs.  To accomplish this goal, drug traffickers may utilize foreign and/or domestic banking institutions and their attendant services, real estate and businesses, both real and fictitious.  They also try to secret, transfer and conceal the money by (a) placing assets in names other than their own to avoid detection while maintaining control, (b) laundering money through what appears to be a legitimate business or businesses, (c) hiding the money in their homes, safes and safety deposit boxes, and/or (d) using the money to buy assets which are difficult to trace. This evidence is useful in a criminal prosecution, and it also is useful in identifying real and personal property that can be seized and forfeited by the government under existing laws. Documentation concerning this type of activity can be stored on digital media and concealed virtually anywhere.

17.    Evidence of significant, unexplained income of drug dealers, or for the acquisition and concealment of money and assets of drug sales, can be found on banking and investment account statements, credit card account statements, canceled checks, money orders, deposit slips, check and savings books, business and personal ledgers, accounting records, safe deposit box

6

records and keys, federal and state tax records, rental receipts, rental agreements, utility bills, overnight mail receipts, telephone bills, loan statements records reflecting ownership of real or personal property (such as deeds of trust or vehicle registration, insurance, and ownership information), vehicle and property rental records, lease and purchase agreements, and canceled mail.  These records can be maintained on paper, but also can be maintained as electronic data on computers and other digital media.  The above items are typically kept by drug dealers on their person or in their businesses, residences and surrounding garages, outbuildings, carports, and yards, the residences of friends or relatives, and vehicles.

18.     The use of digital media, including smartphones, tablets, cellular phones, and digital devices, has become part of everyday life. This is also true for drug traffickers. Information stored in electronic form on all of the above-devices can provide evidence of drug trafficking. Drug traffickers frequently use some or all of these devices to communicate with co-conspirators, customers, sources of supply, and others involved in the drug trade. These communications include, but are not limited to, phone calls, text messages, SMS (Short Message Service) messaging, MMS (Multimedia Messaging Service) messaging, social media posts and messaging, and smartphone application messaging services. Smartphones, tablets, cellular phones, and digital devices are frequently capable of storing messages, emails, social media communications, and communications made over smartphone applications. The content of these communications will often provide evidence of drug trafficking. Numbers stored on a telephone (such as Caller ID lists reflecting recently received calls, speed dial lists of names and/or

telephone numbers, and logs of outgoing and incoming calls) can provide evidence of who the drug dealer is calling, and thus the identity of potential associates.

19.     Drug traffickers often take, or cause to be taken, photographs and/or videos of themselves, their associates, their property and their drugs.  They usually maintain these photographs and/or videos on their person or in their businesses, residences or cars, on computers, or in the residences of friends or relatives.  Smartphones, tablets, cellular phones, digital cameras, and other digital devices, often have the capability to take still photos and videos and save them indefinitely on the device's storage medium. Drug traffickers frequently use these devices to take their photographs and videos.

20.     Drug traffickers often maintain firearms and ammunition on their person or in their vehicles to protect themselves and their drugs and their drug profits.

21.     I know that weapons (including rifles, shotguns, and handguns) are tools of the trade for drug traffickers, who often keep firearms in close proximity to themselves, and their product and proceeds, to protect them from other drug traffickers and law enforcement.

22.     Drug traffickers often conceal evidence of drug dealing in vehicles outside of their residences for ready access and to prevent detection and seizure by officers executing search warrants at their residences.  This evidence, which is discussed in detail in the preceding paragraphs, includes controlled substances, indicia such as packing documents and electronic storage devices (and their contents,) evidence tending to show the distribution of drugs (such as IOUs, pay-owe sheets, ledgers, lists of names and numbers, telephone address books, etc.),

digital devices such as cellular/mobile/smart telephones and tablets (and their contents), and counter-surveillance devices.

23.     A list of items agents seek authority to seize is in Attachment B.

## COMPUTERS, ELECTRONIC STORAGE AND FORENSIC ANALYSIS

24.     As described above and in Attachment B, this application seeks permission to search for evidence and records that might be found in the SUBJECT VEHICLE, in whatever form they are found.  Much of the evidence and records described in the paragraphs above, and in Attachment B, can also be produced and/or stored on computers, digital media and other storage media.  For this reason, I submit that if a computer, digital medium, or storage medium is found in the SUBJECT VEHICLE, there is probable cause to believe those records will be stored on that computer or storage medium. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

25.     *Necessity of seizing or copying entire computers or storage media.*  In most cases, a thorough search of a vehicle for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the vehicle, it is sometimes possible to make an image copy of storage media.  Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files.  Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the

9

storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

    c.   Variety of forms of electronic media.  Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

26.    *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying computers and/or storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant.  The later review may require techniques, including but not limited to computer-assisted scans of the computer or entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

## PROBABLE CAUSE

27.    On April 22, 2020 at approximately 2:59 a.m., Espanola Police Department (EPD) Officer J.D. Lujan spotted a Gray Cadillac XTS sedan with a New Mexico temporary license tag (SUBJECT VEHICLE) turn without signaling into the Ohkay Owingeh Express Mart located at 2306 North Riverside Drive, Espanola, Rio Arriba County, New Mexico.  Officer Lujan turned his patrol car towards the SUBJECT VEHICLE in an attempt to conduct a traffic stop, but the SUBJECT VEHICLE immediately drove away from him. Officer Lujan activated his emergency lights and sirens, but the driver of the SUBJECT VEHICLE refused to stop.

Instead, he drove southbound on Riverside Drive and turned on Calle Checuo. The SUBJECT VEHICLE stopped at the residence located at 2022 Calle Chueco, Espanola, Rio Arriba County, New Mexico.

28.    The driver, who was a Hispanic male, approximately six-feet-tall with a medium build, got out of the vehicle and began yelling in Spanish, "*What's the problem, there is no problem*" at Officer Lujan. The Hispanic male also yelled at the house in Spanish asking for his mom to come outside. Utilizing his vehicle's PA system, Officer Lujan's gave repeated verbal commands to the Hispanic male to get back in his car. When the Hispanic male failed to comply, Officer Lujan ordered the Hispanic male to return to his car and then gave commands for him to come towards Officer Lujan's car; the Hispanic male again did not comply with any of Officer Lujan's commands. The Hispanic male walked away from Officer Lujan and went around the house out of view. Officer Lujan noticed a passenger in the vehicle, and so he remained with the vehicle and passenger as he waited for other officers to arrive.

29.    Once other officers arrived, they approached the vehicle. Officers observed an assault rifle on the back seat of the car and also observed a handgun in between the center console and the driver seat. The passenger in the car was identified as a 14-year-old female juvenile, J.V. When J.V. was asked who the driver of the car was she stated it was "Nando."

30.    While attempting to locate the driver in the area, officers found a cellphone in the back of the residence and a shoe, that they believe belonged to the driver, in a field. They were unable to locate the driver.

31.     Espanola Central Dispatch identified the vehicle as a stolen 2014 gray Cadillac XTS Sedan, VIN:2G61P5S30E9182688.  Officers sealed the vehicle and towed it to the Espanola Police Department in order to obtain a search warrant.

32.     Officer Lujan contacted J.V.'s mother who came to the Espanola Police Department.  J.V. was read her Miranda Rights interviewed by Officer Lujan with her mother present.

33.     J.V. again stated that she had been with "Nando" in the SUBJECT VEHICLE, and that he had been selling drugs out of the SUBJECT VEHCILE that evening.

34.     J.V. told Officer Lujan that there were more drugs in a duffle bag in the trunk of the SUBJECT VEHILCE.  J.V. believed the duffle bag contained Percocet, crack, cocaine and methamphetamine.

## CONCLUSION

32.     I submit that this affidavit supports probable cause for a warrant to search the

SUBJECT VEHICLE described in Attachment A and seize the items described in Attachment B.

Respectfully submitted,

*Michelle Cobb*

Michelle A. Cobb
Special Agent
Federal Bureau of Investigation

Sworn telephonically and signed by electronic means on April 27, 2020:

JOHN F. ROBBENHAAR
UNITED STATES MAGISTRATE JUDGE

14

## ATTACHMENT A

*Property to be searched*

The property to be searched is a 2014 gray Cadillac XTS four door sedan bearing VIN: 2G61P5S30E9182688.

The search of the above SUBJECT VEHICLE shall include the search of the entire vehicle, all storage areas and containers in the SUBJECT VEHICLE.

**ATTACHMENT B**

*Property to be seized*

All records, information, and evidence relating to violations of 21 U.S.C. § 841 –

Distribution and Possession with Intent to Distribute Controlled Substances; 21 U.S.C. § 846 –

Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances; and 18

U.S.C. § 924 – Use of a Firearm in Furtherance of a Drug Trafficking Crime, those violations

occurring on or after April 22, 2020, including:

1.  Controlled substances, including, but not limited to, methamphetamine, heroin, cocaine, Percocet and marijuana.

2.  Drug paraphernalia, including scales, packaging materials, items for packaging and handling drugs.

3.  Large amounts of currency, financial instruments, precious metals, jewelry and other items of value and/or proceeds of drug transactions.

4.  Any and all drug customer lists, drug records, dealers lists, or any notes containing the individual names of such persons, telephone numbers, addresses of these customers or dealers, and any corresponding records of accounts receivable, money paid or received, drugs supplied or received, or cash received to pay for controlled substances or intended to pay for controlled substances.

5.  Telephone and address books or notes containing telephone numbers and addresses of co-conspirators.

6. Telephone toll records for homes and/or businesses owned or controlled by suspected co-conspirators, or other communication devices used by them and/or their drug trafficking associates.

7. Messages, notes, correspondence, and/or communications between drug trafficking associates.

8. Indications of ownership or control of other premises used in unlawful drug trafficking activity, including but not limited to, utility bills, cancelled checks, or envelopes and deeds or leases.

9. Indications of ownership or control over any vehicles located at the place to be searched, including but not limited to, titles, registrations, gas receipts, repair bills and keys belonging to that vehicle.

10. Records, receipts, bank statements and records, money drafts, letters of credit, money orders and cashier's checks received, passbooks, bank checks, safe deposit box keys, vault keys, safes and other items evidencing the obtaining, secreting and/or concealment, and or expenditures of money.

11. Any and all financial or other instruments evidencing placement of assets in the names other than the names of the drug traffickers themselves.

12. Books, records, receipts, diaries, notes, ledgers, airline tickets, cashier's checks, money orders and other papers relating to the transportation, ordering, sale and distribution of controlled substances and the outstanding debts and collections from controlled substances that have been distributed.

13. Photographs or videos of the drug traffickers, their co-conspirators and the property and assets purchased with drug proceeds.

2

14. Other financial records, which may include airline ticket receipts, credit card receipts, rental car receipts and luggage tags reflecting points of travel.

15. Firearms and ammunition, including but not limited to handguns, rifles, shotguns and automatic weapons.

16. Any and all computers and storage media that reasonably appear to contain some or all of the records, information, and/or evidence described in Attachment B.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer, digital media, or storage media; any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "digital media" includes personal digital assistants (PDAs), smartphones, tablets, BlackBerry devices, iPhones, iPods, iPads, digital cameras, and cellular telephones. The term "storage media" includes any physical object upon which electronic data can be recorded, such as hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media or digital medium.

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, smartphones, tablets, server computers, and network hardware.

The terms "storage medium" or "storage media" include any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

3